1

2

3

4

5

6

7

8                       **IN THE UNITED STATES DISTRICT COURT**

9                     **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11    SIDNEY ROSS DEEGAN, III,                    No. 2:19-CV-2310-WBS-DMC-P

12                    Plaintiff,

13          v.                                     <u>ORDER</u>

14    STATE OF CALIFORNIA, et al.,

15                    Defendant.

16

17          Plaintiff, a prisoner proceeding pro se, brings this civil rights action under 42 U.S.C.

18   § 1983. Before the court is Plaintiff's first amended complaint. <u>See</u> ECF No. 17. The Court

19   dismisses the complaint with leave to amend.

20                              **I. SCREENING REQUIREMENT**

21          The Court must screen complaints from prisoners seeking relief against a

22   governmental entity, officer, or employee. <u>See</u> 28 U.S.C. § 1915A(a). The court must identify any

23   cognizable claims and dismiss any portion of the complaint that is frivolous or malicious, fails to

24   state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is

25   immune from such relief. <u>See</u> 28 U.S.C. § 1915A(b)(1), (2).

26          A complaint must contain a short and plain statement of the claim that a plaintiff is

27   entitled to relief. Fed. R. Civ. P. 8(a)(2). The complaint must provide "enough facts to state a claim

28   to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To survive screening, a plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Id. at 678–79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). Plaintiffs must demonstrate that each defendant personally participated in the deprivation of the plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). If the allegations "do not permit the court to infer more than the mere possibility of misconduct," the complaint does not state a claim. Iqbal, 556 U.S. at 679. The complaint need not identify "a precise legal theory." Kobold v. Good Samaritan Reg'l Med. Ctr., 832 F.3d 1024, 1038 (9th Cir. 2016).

The Court must construe a pro se litigant's complaint liberally. See Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam); Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012). However, "'a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled.'" Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)). The Court may dismiss a pro se litigant's complaint "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Hayes v. Idaho Corr. Ctr., 849 F.3d 1204, 1208 (9th Cir. 2017).

## II. PLAINTIFF'S ALLEGATIONS

When Plaintiff filed his amended complaint, he was a state prisoner incarcerated at High Desert State Prison (HDSP). ECF No. 17 at 3. Plaintiff brings suit against twenty-one defendants, most of whom are prison personnel at HDSP: (1) Diaz, as Secretary of the California Department of Corrections and Rehabilitation (CDCR); (2) M.E. Spearman, a warden of HDSP; (3) Jim Pickett, a warden of HDSP; (4) D. Espinoza, a correctional counselor supervisor; (5) R. Peery, associate warden; (6) Knedler, a correctional captain; (7) J. Quam, a correctional counselor; (8) D. Renner, a correctional counselor; (9) Roderick, a correctional counselor; (10) Cervantes, a correctional lieutenant; (11) G. Watkins, a correctional lieutenant; (12) Alkire, a correctional lieutenant; (13) Guzman, a correctional sergeant; (14) Kotlar, a correctional officer; (15) Mortell,

2

a correctional officer; (16) Paoli, a correctional sergeant; (17) Houston; (18) Dardis; (19) Gavilanes; (20) Gray; (21) Richardson, a correctional lieutenant. Id. at 2–4. Plaintiff also sues the State of California. Id. at 1, 32. He sues Defendants in their official and personal capacities. See id. at 3–4.

Around March 2019, following a prison riot, HDSP officials initiated a prison-wide disciplinary search of cells. Id. at 5. Plaintiff placed all his property on his bunk, including his hearing aids, so that officers could search it. Id. at 5–6. Plaintiff also undressed so that he could be strip searched per standard procedure. Id. at 6. He tried to put his hearing aids in after guards searched him. Id. Defendant Kotlar instructed Plaintiff to leave the hearings aids on the bed. See id. Guards restrained Plaintiff outside the cell. Id. When Plaintiff returned, it had been torn apart and Plaintiff's property thrown about the cell. Id. at 6–7. Kotlar confiscated Plaintiff's audio and cable splitters, toothpicks, shoelaces, and letters. Id. at 7. Kotlar also wrote Plaintiff up on a rules violation for having pruno (prisoner-made alcohol) that Plaintiff contends was merely juice. Id. Sometime later, Plaintiff realized that Kotlar had also thrown out Plaintiff's hearing aids. Id. at 8. Plaintiff appealed Kotlar's actions Id.

Later still, Houston conducted an alcohol sweep of prisoners' cells. Id. at 9. Houston found what he alleged to be a bag of pruno in Plaintiff's cell. Id. Mortell then arrived and tore apart Plaintiff's cell, threw wet towels on Plaintiff's grievance paperwork, and littered Plaintiff's other property around the cell. Id. at 9–10. Plaintiff complained that alcohol sweeps are not an excuse to rummage through inmates' property, and that Mortell could not search the cell without cause. Id. Houston and Mortell disregarded Plaintiff's protests, so Plaintiff went to see Defendant Sergeant Guzman. Id. at 10. Guzman was "deliberately indifferent" to Plaintiff's complaints. Id. Houston was nearby and threateningly approached Plaintiff until another guard restrained him. Id. Plaintiff inventoried his cell and noted Houston and Mortell took hot sauces and sweetener. Id. The guard who restrained Houston returned Plaintiff's property. Id.

Defendant Dardis wrote Plaintiff up on another alcohol violation despite Plaintiff's complaints. Id. at 10–11. Although other inmates had pruno, only Plaintiff received a violation. Id. at 11. Plaintiff contends that the violation is false because Dardis claimed that he searched the cell and found pruno. Id. Dardis allegedly did so to cover for Houston and Mortell's "misconduct." Id.

3

1    A few days later, Defendant Gavilanes allegedly contributed to the "campaign of

2  harassment" against Plaintiff by conducting another cell search. Id. Gavilanes claimed he found

3  pruno in Plaintiff's cell. Id. Plaintiff contends that there was no alcohol and that his cell was again

4  left in disarray. Id. His legal paperwork had again been dirtied and his property thrown about. Id.

5    Defendant Richardson, another handful of days later, called Plaintiff in for a hearing

6  on the alcohol violation Kotlar issued. Id. at 12. HDSP officials granted Plaintiff a staff assistant to

7  help gather witnesses and other relevant information and submit a written report to the senior

8  hearing officer. Id. Richardson was the senior hearing officer. Id. Richardson permitted witnesses

9  at the hearing but allegedly improperly denied Plaintiff the ability to ask them any questions at all,

10  including pertinent questions. Id. at 12–13. Richardson himself asked Plaintiff how Plaintiff lost

11  his hearing aids, and Plaintiff explained that Kotlar threw them away and that Plaintiff had filed a

12  grievance against Kotlar. Id. at 13. Plaintiff alleges that Richardson then purposely gave Plaintiff

13  an arbitrary hearing by refusing all questions, effectively denying him the ability to have witnesses.

14  Id. Richardson stated that all he needed was a statement from one officer saying Plaintiff had pruno.

15  Id. Richardson found Plaintiff guilty of the violation and suspended Plaintiff's privileges (e.g., to a

16  television, canteen, and packages) for a month. Id. Plaintiff also lost 120 days of good-time credit.

17  Id. Plaintiff believes the total punishment was excessive and improper. Id. at 14.

18    Following the hearing, Mortell allegedly searched Plaintiff's cell yet again, even

19  though another officer had already searched it and found no contraband. Id. Mortell threw

20  Plaintiff's property about the cell. Id. Paoli arrived with a sealed juice box as part of Plaintiff's

21  kosher meal service. Id. Mortell threw kosher meal items out of the cell in addition to another bag

22  of juice Plaintiff says he had on the floor. Id. Without examining the juice, Mortell wrote Plaintiff

23  up on another fictitious violation for possessing pruno. Id. Plaintiff's cell was once again left dirty,

24  and his property was strewn around. Id. at 15. Grievance paperwork was again damaged. Id. Paoli

25  did nothing to stop the abuse. Id.

26    HDSP officials held hearings on the more recent two alcohol violations. Id. at 16.

27  Fearing further reprisal, Plaintiff contends that he pled guilty under duress. Id. Plaintiff also feared

28  reprisal because he filed an appeal against Richardson for his conduct at the earlier hearing. Id.

4

Nevertheless, Defendants subjected Plaintiff to more searches. Id. at 16–18. At the beginning of June 2019, Mortell searched Plaintiff's cell. Id. Mortell threw Plaintiff's property around but did not touch property belonging to Plaintiff's cellmate. Id. Mortell later searched Plaintiff's body in the dining hall and threatened to place Plaintiff in a restricted unit where all his property and privileges would be taken. Id. at 17. Defendant Gray also later searched Plaintiff's cell. Id. at 17–18. Later in June, Mortell searched Plaintiff's cell again. Id. at 18. Mortell allegedly lied and, at some point, stated he had seen Plaintiff hide alcohol. Id. Mortell may have written Plaintiff up on another violation. Id.

Mortell continued to harass Plaintiff for some time. Id. at 18–21. Although Plaintiff lost dayroom (recreation room) privileges because of the earlier hearing, Plaintiff was allowed in the dayroom when performing his job as an ADA representative for inmates. Id. Mortell allegedly knew this but nevertheless threatened Plaintiff while he was in the dayroom attending to an inmates' disability issue. Id. at 21. Mortell stated that, if Plaintiff did not return to his cell, he would be fired. Id. Mortell threatened Plaintiff again sometime later, saying he would have Plaintiff fired as a disability representative. Id. Mortell also allegedly searched Plaintiff's body again near the end of June while Plaintiff was in the dining hall. Id.

After Plaintiff had an anxiety attack when Mortell approached Plaintiff outside a hearing room, the third hearing on Plaintiff's further alleged alcohol violations was postponed. Id. at 22–24. When the new hearing date came around, Defendant Cervantes would not allow Plaintiff to call Mortell as a witness or provide Plaintiff with a staff assistant. Id. at 24. Cervantes did not allow Plaintiff to ask questions. Id.

Later, in August 2019, a fight involving Plaintiff's roommate broke out near Plaintiff's cell. Id. at 25. Plaintiff took a couple of steps toward the fight because he had seen his roommate fighting. Id. A guard ordered Plaintiff away, and Plaintiff complied. Id. Nevertheless, a guard wrote Plaintiff up for intent to initiate violence even though Plaintiff's roommate received minimal consequence. Id. In Plaintiff's view, HDSP officials did so to continue to retaliate against him. Id. Defendant Alkire found Plaintiff guilty of the violence-related violation and suspended privileges for three months. Id. Plaintiff contends that the disciplinary hearings were arbitrary, and

1    Plaintiff was never allowed to have witnesses. Id. at 26. Alkire allegedly lied on the record and

2    stated that Plaintiff was granted witnesses. Id.

3         A correctional officer searched Plaintiff's cell in October and found pruno. Id. The

4    guard wrote up a rules violation but before it had ever been served or adjudicated at a hearing,

5    Mortell and Guzman allegedly removed Plaintiff as the ADA representative without any cause. Id.

6         In November, Defendant Lieutenant Cervantes oversaw a hearing on the October

7    pruno charge. Id. at 27. Cervantes called the charging guard as a witness but only asked one of

8    Plaintiff's questions while telling Plaintiff to "refer to the report" on all his other questions. Id.

9    Cervantes allegedly improperly found Plaintiff guilty of possession of alcohol, rather than the lesser

10   charge of fermentation of materials for alcohol, which Plaintiff admitted to. Id. Plaintiff alleges that

11   Cervantes disregarded process in order to improperly find Plaintiff guilty of a more serious offense.

12   Id. at 28. Cervantes threatened to have Plaintiff placed on restrictive status where he would lose his

13   privileges. Id.

14        Plaintiff was eventually treated as if on a more restrictive status even though his

15   prison file did not show that classification. See id. at 28–29. He contends that Cervantes and Mortell

16   pushed that treatment in order to eventually strip him of all his privileges and his disability

17   representative job. Id. And despite Plaintiff's requests for information and help, Defendant

18   Roderick did nothing to help. Id.

19        When HDSP officials finally took Plaintiff to have his classification altered,

20   Defendant Captain Knedler would not look at evidence Plaintiff presented to prove he was being

21   harassed and that Defendants were violating his rights. Id. at 30. Instead, Knedler placed Plaintiff

22   on restrictive status, for which he lost good time credit. Id. HDSP officials may have then

23   approached by correctional officers who threatened him about filing grievances. See id. at 30–31.

24        Finally, Plaintiff contends that Wardens Spearman and Pickett (who were wardens

25   of HDSP at different points over the course of events Plaintiff challenges) are responsible for

26   reviewing complaints of staff misconduct. Id. at 31. However, both Spearman and Pickett allegedly

27   declined to process grievances against staff. Id. Similarly, Defendants Watkins, Espinoza, Quam,

28   and Peery each rejected, cancelled, or made "disappear" Plaintiff's grievances. Id.

Based on the above, Plaintiff makes several claims. Id. at 32–39. First, as to Defendant Kotlar and California, Plaintiff appears to claim Kotlar violated the Eighth Amendment in disregard of Plaintiff's disabilities when he threw away Plaintiff's hearing aids.[1] Id. at 31–33.

Second, Plaintiff asserts a First Amendment claim against Richardson, Cervantes, Alkire, Guzman, Paoli, Houston, Mortell, Dardis, Gavilanes, and Gray based on their alleged retaliatory actions against him. Id. at 33–34.

Third, Plaintiff contends that Kotlar, Espinoza, Quam, Renner, Roderick, Richardson, Cervantes, Watkins, Alkire, Guzman, Paoli, Houston, Mortell, Dardis, Gavilanes, and Gray violated his Eighth Amendment right to be free from abuse and harassment. Id. at 34–35.

Fourth, Plaintiff asserts a Fourteenth Amendment claim against Kotlar, Espinoza, Quam, Renner, Roderick, Richardson, Cervantes, Alkire, Guzman, Paoli, Houston, Mortell, Dardis, Gavilanes, and Gray. Id. at 35–36. He asserts a due process violation based on the alleged taking of his property, as well as their alleged improper falsification of reports and disregard of his due process rights during disciplinary hearings. Id.

Fifth, Plaintiff asserts another Eighth Amendment claim, this time against Pickett, Spearman, Diaz, Espinoza, Renner, Quam, Peery, Knedler, and Roderick. Id. at 37–39. Plaintiff posits that those Defendants violated the Eighth Amendment by failing to investigate staff misconduct and discipline offending personnel. Id.

Plaintiff asserts several injuries Id. at 32–39. He contends that he has suffered discrimination, has been deprived of his ability to hear, and has suffered psychological and physical side effects because of Defendants' harassing and retaliatory actions. Id. For instance, he has experienced lasting terror, incontinence, humiliation, mental and emotional distress, and shame. Id. / / /

### III. DISCUSSION

[1] Plaintiff also cites the Americans with Disabilities Act (ADA), arguing for an abrogation of California's sovereign immunity and stating that Kotlar discriminated against him. ECF No. 17 at 32. But it is not wholly clear whether Plaintiff means to make out an ADA claim. Plaintiff goes on to focus on language associated with the Eighth amendment, contending that Kotlar was deliberately indifferent to Plaintiff's disabilities and serious medical needs, and that Kotlar should have known that his throwing away Plaintiff's hearing aids created a substantial risk of serious harm. See id. The Court construes the claim as an Eighth Amendment claim. However, if Plaintiff believes that he has a viable ADA claim, he may reassert it more clearly on amendment.

1    The Court previously screened Plaintiff's original complaint. ECF No. 15. The

2    Court found that Plaintiff had stated a cognizable First Amendment retaliation claim, Eighth

3    Amendment claim for the confiscation of his hearing aids, and Fourteenth Amendment due process

4    claim related to falsification of reports and resulting disciplinary hearings. Id. at 3.

5    Here, the Court similarly finds that Plaintiff has stated a few cognizable claims.

6    Plaintiff's Eighth Amendment claim against Kotlar for confiscation of his hearing aids in disregard

7    of his medical needs may proceed. Plaintiff states a First Amendment claim Richardson, Cervantes,

8    Alkire, Guzman, Paoli, Houston, Mortell, Dardis, Gavilanes, and Gray to the extent Plaintiff's

9    allegations indicate they retaliated against Plaintiff for protected conduct like filing grievances.

10   Construing Plaintiff's complaint liberally, at this early screening stage, Plaintiff

11   makes out an Eighth Amendment claim against Kotlar, Espinoza, Quam, Renner, Roderick,

12   Richardson, Cervantes, Alkire, Guzman, Paoli, Houston, Mortell, Dardis, Gavilanes, and Gray for

13   their alleged abuse and harassment. Plaintiff also states a Fourteenth Amendment due process claim

14   against Kotlar, Espinoza, Quam, Renner, Roderick, Richardson, Cervantes, Alkire, Guzman, Paoli,

15   Houston, Mortell, Dardis, Gavilanes, and Gray for actions related to false reports and disciplinary

16   proceedings.

17   However, Plaintiff's complaint also suffers from several defects, some of which the

18   Court already identified in the prior screening order. The State of California is immune from suit.

19   Plaintiff cannot sue Defendants in their official capacity. Plaintiff does not state a due process claim

20   for the taking of his hearing aids. Plaintiff does not establish supervisory liability for failing to

21   investigate staff misconduct. And finally, Plaintiff does not appear to link Renner to any

22   wrongdoing.

23   **A. § 1983 Standards:**

24   Section 1983 provides a remedy for the violation of constitutional and federal

25   statutory rights by a person acting under the authority of state law. 42 U.S.C. § 1983; see, e.g.,

26   Sampson v. County of Los Angeles, 974 F.3d 1012, 1018 (9th Cir. 2020); Hall v. City of Los

27   Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Long v. County of Los Angeles, 442 F.3d 1178,

28   1185 (9th Cir. 2006). Section 1983, however, is not itself a source of substantive rights. Albright

8

1  v. Oliver, 510 U.S. 266, 271 (1994); Sampson, 974 F.3d at 1018; Hall, 697 F.3d 1068. Rather, §

2  1983 is a vehicle for vindicating rights "elsewhere conferred." Sampson, 974 F.3d at 1018.

3          To state a claim under § 1983, Plaintiff must allege (1) a deprivation of his

4  constitutional rights or federal protected rights and (2) that the defendant's actions were taken under

5  color of state law. Florer v. Congregation Pidyon Shevuyim, N.A., 639 F.3d 916, 921 (9th Cir.

6  2011) Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006); see Sampson, 974 F.3d at 1018;

7  Hall, 697 F.3d at 1068. Plaintiff, in other words, must plausibly allege that he suffered a violation

8  of a federally protected right and that a person acting under color of state law *committed* that

9  violation. See, e.g., Sampson, 974 F.3d at 1018; Long, 442 F.3d at 1185.

10          A person deprives another of a constitutional right within § 1983's meaning if they

11  take an affirmative action, participates in another person's affirmative action, or fails to take an

12  action that they are legally required to take and that causes the alleged deprivation. Preschooler II

13  v. Clark Cty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007); see Lacey v. Maricopa County,

14  693 F.3d 896, 915 (9th Cir. 2012). Personal participation, however, is only one predicate for

15  liability under § 1983. Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978); see Lacey, 693 F.3d at

16  915. "The requisite causal connection may [also] be established when an official sets in motion a

17  'series of acts by others which the actor knows or reasonably should know would cause others to

18  inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.3d at 743).

19  This standard of causation resembles the typical "foreseeability" formulation of proximate cause.

20  Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see Harper v. City of Los

21  Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

22          In sum, there can be no § 1983 liability unless there is an adequate link or connection

23  between a defendant's actions and the claimed deprivation. See, e.g., Arnold, 637 F.2d at 1355;

24  Johnson, 588 F.2d at 743; see also Harper, 533 F.3d at 1026. A plaintiff must show that a defendant

25  was the actionable cause of a claimed injury. Harper, 533 F.3d at 1026. Vague and conclusory

26  allegations of official participation in a civil rights violation are unsatisfactory. Litmon v. Harris,

27  768 F.3d 1237, 1241 (9th Cir. 2014); Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

28  / / /

**B. Immune Defendants:**

    **i.   State of California:**

As the Court discussed in its previous screening order, California is immune is from suit under § 1983. Insofar as Plaintiff sues California under § 1983, any claim is inappropriate.

The Eleventh Amendment provides that the "[j]udicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. amend. XI. Generally, the Eleventh Amendment precludes federal courts from exercising jurisdiction over suits by individuals against a State and its instrumentalities. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 97–100 (1984); Doe v. Regents of the Univ. of Cal., 891 F.3d 1147, 1153 (9th Cir. 2018); see Allen v. Cooper, 140 S. Ct. 994, 1000 (2020); Maldonado v. Johnson, No. CV 19-5312-JVS (SP), 2021 WL 1152889, at *2 (C.D. Cal. Feb. 12, 2021).

There are a few exceptions to that rule. See, e.g., Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238 (1985); Holley v. Cal. Dep't Corrs., 599 F.3d 1108, 1111 (9th Cir. 2010); Douglas v. Cal. Dep't of Youth Auth., 271 F.3d 812, 817–18 (9th Cir. 2001). States can consent to suit and waive immunity. Sossamon v. Texas, 563 U.S. 277, 283–85 (2011); Pennhurst, 465 U.S. at 99; Holley, 599 F.3d at 1111; Maldonado, 2021 WL 1152889, at *2. Congress may abrogate States' immunity. See Coleman v. Court of Appeals of Md., 566 U.S. 30, 35 (2012); Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 55–56 (1996); Pennhurst, 465 U.S. at 99; Holley, 599 F.3d at 1111; Maldonado, 2021 WL 1152889, at *2. And parties may sue state officials for prospective injunctive relief. See Seminole Tribe, 517 U.S. at 73; Doe, 891 F.3d at 1153; Krainski v. Nevada ex rel. Bd. of Regents, 616 F.3d 963, 967–68 (9th Cir. 2010); Douglas, 271 F.3d at 817–18.

Section 1983 does not override States' sovereign immunity. E.g., Will v. Mich. Dep't of State Police, 491 U.S. 58, 67, 71 (1989) ("We cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent."). Too, immunity extends to arms of the State, like state agencies. Crowe v. Oregon State Bar, 989 F.3d 714, 730 (9th Cir. 2021); Brown v. Cal. Dep't Corr., 554 F.3d 747, 752 (9th Cir. 2009); Durning v. Citibank, N.A., 950 F.2d 1419, 1422–23 (9th Cir. 1991); see Pennhurst, 465 U.S. at 100.

1    California has consented to some suit in its own courts, such as under the California

2    Torts Claims Act. See, e.g., Maldonado, 2021 WL 1152889, at *2. But California has not waived

3    its immunity in federal court. E.g., Brown, 554 F.3d at 752; Dittman v. California, 191 F.3d 1020,

4    1025–26 (9th Cir. 1999); see also Atascadero, 473 U.S. at 241. California is not a proper defendant.

5    **ii.    Plaintiff Cannot Sue Defendants in their Official Capacity:**

6    Plaintiff notes that he sues Defendants in their official capacities (ECF No. 17 at 3–

7    4), which is impermissible. A suit against a public employee in their official capacity is effectively

8    a suit against the employing public entity. Will, 491 U.S. at 64–67, 71; Kentucky v. Graham, 473

9    U.S. 159, 165 (1985); Seven Up Pete Venture v. Schweitzer, 523 F.3d 948, 952 (9th Cir. 2008);

10   Lear v. Navarro, No. 1:21-cv-00600-BAM (PC), 2021 WL 3287264, at *4 (E.D. Cal. Aug. 2, 2021).

11   Thus, it is no different from a suit against the State. Will, 491 U.S. at 71; see Hafer v. Melo, 502

12   U.S. 21, 25 (1991); Holley, 599 F.3d at 1111; Seven Up, 523 F.3d at 952. The Eleventh Amendment

13   precludes claims for damages against state officials in their official capacity. See, e.g., Will, 491

14   U.S. 58, 64–67, 71; Mitchell v. Washington, 818 F.3d 436, 442 (9th Cir. 2016); Holley, 599 F.3d

15   at 1111; see also Lund v. Cowan, 5 F.4th 964, 969 (9th Cir. 2021); Lear, 2021 WL 3287264, at *4.

16   Insofar as Plaintiff sues Defendants in their official capacities, his claims cannot

17   proceed. Mitchell, 818 F.3d at 442. The Eleventh Amendment does not bar his claims against

18   Defendants in their *personal* capacities. Id.; see Pena v. Gardner, 976 F.2d 469, 472 (9th Cir. 1992).

19   **C. Confiscation of Plaintiff's Property:**

20   The Court also already informed Plaintiff that he cannot state a due process claim

21   for Kotlar's taking of his hearing aids. ECF No. 15 at 3. California provides a post-deprivation

22   remedy that satisfies due process.

23   The Fourteenth Amendment's Due Process Clause protects against deprivation of

24   life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1. State action

25   violates that Clause if it deprives a person "of a constitutionally protected liberty or property

26   interest" without affording satisfactory procedural protections. See, e.g., Zinermon v. Burch, 494

27   U.S. 113, 125 (1990); McQuillion v. Duncan, 306 F.3d 895, 900 (9th Cir. 2002). At base, the Due

28   Process Clause encompasses a promise of fair procedure. See, e.g., Zinermon, 494 U.S. at 125.

11

1    In the context of procedural due process claims, it is not a deprivation itself that is

2    unlawful. Id. Rather, as implied above, what becomes unconstitutional is deprivation of a liberty or

3    property interest with sufficient due process. Id.; see S.B. by and through Kristina B. v. Cal. Dep't

4    of Educ., 327 F. Supp. 3d 1218, 1239 (E.D. Cal. 2018). The violation actionable under § 1983 is

5    thus not complete at the time of a deprivation, but when the State fails to provide due process.

6    Zinermon, 494 U.S. at 126. Thus, in order to establish a procedural due process claim, plaintiffs

7    must show (1) a protected liberty or property interest (2) that the government deprived (3) without

8    adequate "process." E.g., Hotop v. City of San Jose, 982 F.3d 710, 718 (9th Cir. 2020); Shanks v.

9    Dressel, 540 F.3d 1082, 1090 (9th Cir. 2008); Brewster v. Bd. of Educ., 149 F.3d 971, 983 (9th Cir.

10   1998). Once the Court determines that a protected interest has been deprived, the question becomes

11   what procedures satisfy "due process of law." See, e.g., Lavan v. City of Los Angeles, 693 F.3d

12   1022, 1031 (9th Cir. 2012); Brewster, 149 F.3d at 983; see also Cleveland Bd. of Educ v.

13   Loudermill, 470 U.S. 532, 541 (1985); Barry v. Yosemite Cmty. Coll. Dist., No. 1:16–cv–00411–

14   LJO–MJS, 2017 WL 896307, at *4 (E.D. Cal. Mar. 7, 2017).

15   Property is facially a protected interest under the Due Process Clause. U.S. Const.

16   amend. XIV, § 1. Deprivation of a property interest without due process of law is actionable under

17   § 1983. See Zinermon, 494 U.S. at 126; Brewster, 149 F.3d at 983; S.B., 327 F. Supp. 3d at 1239.

18   There is, however, no cognizable § 1983 claim for deprivation of a property interest

19   if the state provides an adequate post-deprivation remedy. See, e.g., Zinermon, 494 U.S. at 128–

20   32; Hudson v. Palmer, 468 U.S. 517, 533 (1984); Barnett v. Centoni, 31 F.3d 813, 816–17 (9th Cir.

21   1994) (citing Cal. Gov't Code §§ 810–895) ("[A] negligent or intentional deprivation of a

22   prisoner's property fails to state a claim under section 1983 if the state has an adequate post

23   deprivation remedy."). California law, through the Government Claims Act, provides an adequate

24   post-deprivation remedy for property deprivations. E.g., Barnett, 31 F.3d at 816–17; see also Nible

25   v. Fink, 828 F. App'x 463, 464 (9th Cir. 2020); Maraglino v. Espinosa, 796 F. App'x 451, 451 (9th

26   Cir. 2020); Burton v. Burton, No. 2:20-cv-02395-JDP (PC), 2021 WL 352148, at *1 (E.D. Cal.

27   Feb. 2, 2021); Holt v. Alvarado, No. 1:19-cv-00930-NONE-GSA-PC, 2020 WL 4922378, at *7

28   (E.D. Cal. Aug. 21, 2020).

12

California offers Plaintiff an adequate post-deprivation remedy for the alleged taking of property like his hearing aids. See Barnett, 31 F.3d at 816–17; Nible, 828 F. App'x at 464. His due process claim cannot proceed as currently pled.

**D.  Plaintiff Has not Established a Supervisory Liability Claim:**

Generally, supervisors are not liable for the conduct of their subordinates. See Vazquez v. County of Kern, 949 F.3d 1153, 1166 (9th Cir. 2020); Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). There is no *respondeat superior* liability under § 1983. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691–92 (1978); Vazquez, 949 F.3d at 1166; Crowley, 734 F.3d at 977; Jones, 297 F.3d at 934. A supervisor, however, may be liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations or otherwise knew of their subordinates' violations and failed to act to prevent them. Vazquez, 949 F.3d at 1166; Crowley, 734 F.3d at 977. Stated differently, a supervisor may be liable if (1) they are personally involved in a constitutional deprivation, or (2) there is an adequate causal connection between the supervisor's wrongful conduct and an alleged constitutional violation. Crowley, 734 F.3d 977; Henry A. v. Willden, 678 F.3d 991, 1003–04 (9th Cir. 2012); Quiroz v. Horel, 85 F. Supp. 3d 1115, 1149 (N.D. Cal. 2015).

A plaintiff may establish the required causal connection by showing that a supervisor instigated a series of acts by others which the official knows or reasonably should know would cause infliction of constitutional harm. Vazquez, 949 F.3d at 1166. A supervisor may be liable in their individual capacity for their own culpable action or inaction in the control, supervision, or training of subordinates; for acquiescence in a constitutional harm; or for conduct displaying a reckless or callous indifference for the rights of others. Rodriguez v. County of Los Angeles, 891 F.3d 776, 798 (9th Cir. 2018); Starr v. Baca, 652 F.3d 1202, 1207–08 (9th Cir. 2011).

It is, however, insufficient for a plaintiff simply to allege that supervisors knew about the constitutional violation and that they generally created policies and procedures that led to the violation. See Hydrick v. Hunter, 669 F.3d 937, 942 (9th Cir. 2012). An inmate plaintiff must allege specifics, such as a specific policy or event, that the supervisory instigated that led to the constitutional violations. See id.; Quiroz, 85 F. Supp. 3d at 1149.

13

1            An inmate must also show that a supervisor had the requisite state of mind to

2    establish liability. See OSU Student All. v. Ray, 699 F.3d 1053, 1071 (9th Cir. 2012); see also Starr,

3    652 F.3d at 1207; Quiroz, 85 F. Supp. 3d at 1149. The state of mind question turns on the state of

4    mind required by a given underlying claim. See OSU Student Alliance, 699 F.3d at 1071; Starr,

5    652 F.3d at 1207; Quiroz, 85 F. Supp. 3d at 1149.

6            Here, it is not always clear which Defendants Plaintiff alleges possess supervisory

7    duties. Although Plaintiff includes some specific allegation of misconduct on the part of apparent

8    supervisory defendants—for example, Richardson's alleged abuse of disciplinary procedures to

9    cover for Kotlar—his assertions against Pickett, Spearman, Diaz, Espinoza, Renner, Quam, Peery,

10   Knedler, and Roderick amount to a vague claim that they generally did not investigate subordinates'

11   conduct. See ECF No. 17 at 29–31. That conclusory claim does not establish the requisite

12   knowledge or causal connection for supervisory liability. See Hydrick, 669 F.3d at 942; Quiroz, 85

13   F. Supp. 3d at 1149. Plaintiff's claims against Pickett, Spearman, and Diaz are especially

14   nonspecific and conclusory. See ECF No. 17 at 31, 37–38. Plaintiff does not discuss Pickett,

15   Spearman, or Diaz until the end of the complaint when he generally alleges that they are responsible

16   for subordinates (and for investigating their misconduct) as hiring authorities within HDSP or

17   CDCR. See id. That claim is inadequate. A § 1983 claim may not be predicated upon a theory of

18   *respondeat superior*. Vazquez, 949 F.3d at 1166; Crowley, 734 F.3d at 977; Jones, 297 F.3d at 934.

19           To the extent that Plaintiff means to establish supervisory liability on the part of that

20   Watkins, Espinoza, Quam, and Peery, the Court believes that Plaintiff's allegation that they

21   cancelled appeals comes somewhat closer to the line. See ECF No. 17 at 31, 37–38. But there is no

22   specific assertion that they acted under supervisory authority and were personally or casually

23   involved in a constitutional deprivation caused by subordinates. As pled, his general allegation that

24   they were deliberately indifferent in rejecting grievances does not establish liability for other

25   Defendants' alleged misconduct. An allegation they generally knew of others' misconduct and did

26   not investigate that misconduct does not establish liability.

27   / / /

28   / / /

1    **E. Causal Connection:**

2              As far as the Court can tell, Plaintiff does not discuss (or at least not clearly in his

3    forty-one-page complaint) Defendant Renner. Yet, Plaintiff asserts several claims against Renner.

4    ECF No. 17 at 34–39. That method of Pleading is unsatisfactory. Plaintiff must plausibly plead that

5    Renner was the actionable cause of a claimed injury. See, e.g., Harper, 533 F.3d at 1026. Plaintiff

6    must plausibly allege that he suffered a violation of a federally protected right and that a person

7    (i.e., Renner) acting under color of state law caused that deprivation. See, e.g., Sampson, 974 F.3d

8    at 1018. At present, Plaintiff fails to show that Renner is the cause of any deprivation.

9                                   **IV. CONCLUSION**

10             Because it is possible that some of the deficiencies identified in this order may be

11   cured by amending the complaint, Plaintiff is entitled to leave to amend prior to dismissal of the

12   entire action. See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc). Plaintiff is

13   informed that, as a general rule, an amended complaint supersedes the original complaint. See

14   Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992). Thus, following dismissal with leave to

15   amend, all claims alleged in the original complaint which are not alleged in the amended complaint

16   are waived. See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). Therefore, if Plaintiff amends

17   the complaint, the Court cannot refer to the prior pleading in order to make Plaintiff's amended

18   complaint complete. See Local Rule 220. An amended complaint must be complete in itself without

19   reference to any prior pleading. See id.

20             If Plaintiff chooses to amend the complaint, Plaintiff must demonstrate how the

21   conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights. See Ellis

22   v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how each

23   named defendant is involved and must set forth some affirmative link or connection between each

24   defendant's actions and the claimed deprivation. See May v. Enomoto, 633 F.2d 164, 167 (9th Cir.

25   1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

26             Because some of the defects identified in this order cannot be cured by amendment,

27   Plaintiff is not entitled to leave to amend as to such claims. Plaintiff, therefore, now has the

28   following choices: (1) Plaintiff may file an amended complaint which does not allege the claims

1   identified herein as incurable, in which case such claims will be deemed abandoned and the Court

2   will address the remaining claims; or (2) Plaintiff may file an amended complaint which continues

3   to allege claims identified as incurable, in which case the Court will issue findings and

4   recommendations that such claims be dismissed from this action, as well as such other orders and/or

5   findings and recommendations as may be necessary to address the remaining claims.

6           Finally, Plaintiff is warned that failure to file an amended complaint within the time

7   provided in this order may be grounds for dismissal of this action. See Ferdik, 963 F.2d at 1260–

8   61; see also Local Rule 110. Plaintiff is also warned that a complaint which fails to comply with

9   Rule 8 may, in the Court's discretion, be dismissed with prejudice pursuant to Rule 41(b). See

10  Nevijel v. North Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981).

11          Accordingly, IT IS HEREBY ORDERED that:

12          1.      Plaintiff's first amended complaint (ECF No. 17) is dismissed with leave to

13  amend; and

14          2.      Plaintiff shall file a first amended complaint within 30 days of the date of

15  service of this order.

16

17  Dated:  August 30, 2021

    DENNIS M. COTA
    UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

27

28